JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Samuel Lillard appeals from his conviction for domestic violence pursuant to R.C. 2919.25.[1] After a trial to the bench, the appellant was sentenced to a term of incarceration of 180 days. The court gave the appellant credit for three days incarceration and suspended the balance of 177 days. The court imposed a fine of $1,000, of which $700 was suspended.
 {¶ 2} At the appellant's trial, Ms. Tamika Jones, the victim, testified that on November 20, 2001, she arrived home from work at approximately 11:30 p.m. Her fiancé, the appellant, was unhappy with her because she had stopped for a drink.[2] Ms. Jones testified that she was a little inebriated.
 {¶ 3} At trial, Ms. Jones stated that when she arrived home, the appellant was asleep on the couch. She entered the bathroom as is her normal routine and when she was finished an argument ensued between her and the appellant. Ms. Jones went into the bedroom to change her clothes and the argument continued through the door, which she had slammed and locked in the appellant's face. The appellant pushed the door in and the two then argued vigorously, face to face, using profane language. Ms. Jones testified that "It was really getting violent about to get violent, and I bit him. And I pushed him on the bed, and he got up and he choked me up by my collar, and I was screaming and crying at the same time while he was doing this." (T. 6).
 {¶ 4} Ms. Jones testified that she told the police who arrived on the scene that she and the appellant "got into it" and that he "choked me up by my collar" (T. 6). The statement Ms. Jones made to the police stated, "He put his hands on me, and he choked me and he kicked in our bedroom door because I had one drink and he didn't approve." (T. 9). During her trial testimony, Ms. Jones changed her story, testifying that the appellant did not kick in the bedroom door, but rather that he pushed it open. The victim also testified that her children did not witness the altercation because they were in their room with the door closed.
 {¶ 5} Ms. Jones testified that the day after the incident she met with Detective Oliver and stated that she did not want to prosecute the appellant. At the time of the incident, Ms. Jones did not tell the police that she bit the appellant. In fact, Ms. Jones did not inform anyone that she bit the appellant until the day before trial.
 {¶ 6} Cleveland Police Officer Joseph Mooney and his partner, Patrolman Hartman, responded to a 911 call from the appellant's residence. The appellant answered the door; he was fully clothed, was relatively calm, and had no visible injuries. Neither Ms. Jones nor the appellant gave any indication that Ms. Jones bit the appellant. Ms. Jones was sitting on the floor with blood coming from her split lip. She was frightened of the appellant, was slightly angry, and was crying. Upon Officer Mooney's inquiry as to what happened, the appellant responded that they were arguing. When asked by the officer if "it got physical," the appellant responded that he slapped her (T. 25).
 {¶ 7} Ms. Jones informed the officers that she had stopped after work for a drink and when she arrived home she and the appellant began to argue. Ms. Jones indicated that "it became physical" and that the appellant slapped her in the face (T. 24). Ms. Jones informed the police that the argument had begun in the living room, but she removed herself from his presence by going into the bedroom and shutting the door. The appellant kicked in the door and followed her into the bedroom where he grabbed her by the throat, threw her to the ground and slapped her in the mouth. Ms. Jones told the police that her two children were present during the entire event and that her eldest son telephoned the police.
 {¶ 8} The appellant's seven-year-old son testified that his mother and stepfather were fighting and that he called the police. He stated that he and his younger brother were in their room, that his stepfather was yelling and his mother was yelling and crying. His mother yelled to him to call the police and he did so.
 {¶ 9} Detective Cynthia Oliver testified that she is a member of the Domestic Violence Unit. She spoke with Ms. Jones on the telephone for approximately 45 minutes the day of the altercation and met with her the next day. Ms. Jones indicated that she did not want to prosecute the appellant. At no time did the victim indicate that she was the aggressor. Ms. Jones was hoping that calling the police would teach the appellant "a lesson" (T. 42).
 {¶ 10} Detective Oliver related the story she heard from the victim as follows. Ms. Jones stopped after work for a drink and upon returning home she and the appellant became involved in a verbal altercation. Ms. Jones stated that the argument became physical and the appellant tried to hit her. She ran into the bedroom and locked the door. The appellant kicked the door and pushed it in and then slapped her about her face causing her lip to bleed. At the pretrial, Ms. Jones recanted her statement and informed Detective Oliver that she did not know how she was struck. Detective Oliver testified that, in her opinion, this is a classic scenario and victims always change their story.
 {¶ 11} The appellant testified on his own behalf. He stated that the officer who interviewed him at the time of the incident observed the bite marks on his chest, and the blood on his arms and chest from the scratches inflicted by Ms. Jones. The appellant stated that he grabbed Ms. Jones to "get her off of me." (T. 48). No photographs were taken of the injuries.
 {¶ 12} The appellant testified that he heard Ms. Jones arrive home late from work. She was stumbling and her speech was slurred. He immediately became upset because his father is a heavy drinker (T. 50). Ms. Jones went into the bathroom and he then knocked hard on the bathroom door. She opened the door and they continued arguing. Ms. Jones then entered the bedroom and locked the door. The appellant became angry and hit the door one time, breaking the top part of the door. The argument continued in the bedroom and Ms. Jones bit him on the chest. He grabbed her around her collar to get her off of him. As he was doing so she scratched him on his face and arms. Ms. Jones pushed him onto the bed.
 {¶ 13} By the time the officers arrived the altercation was over and the appellant was calm again. The appellant testified that he informed the officer that he did not strike the victim. At the police station he was asked if he needed medical attention, but he declined.
 {¶ 14} The appellant bared his chest for the court to examine the scar from the bite, but the trial court was unable to detect any marks or scars.
 {¶ 15} Cleveland Police Officer Luke Hartman testified that he also responded to the appellant's residence. The appellant was in the living room area and was sweaty, calm, and wearing clothes. There was no blood on the appellant's face and the appellant did not show any injuries to Officer Hartman. The appellant stated that there was an argument, it became physical, and that he slapped Ms. Jones.
 {¶ 16} At the conclusion of all of the evidence, the trial court stated on the record:
 {¶ 17} "Well, as the fact finder, I've had the unique opportunity to observe the witnesses and their demeanor in the courtroom, to be able to listen to them and to look at their faces and to hear their voices and to judge their credibility. And as a result of this opportunity, the Court makes a finding of guilt to the charge of Domestic Violence." (T. 71).
 {¶ 18} After referring the appellant to probation the court continued: "Let the record reflect that the Court didn't find the defendant to have any credibility whatsoever. He wouldn't look at the Court, he wouldn't make any eye contact as he testified, and this gentleman was not believable in any way." (T. 71-72).
 {¶ 19} The appellant sets forth one assignment of error and argues that the verdict is against the manifest weight of the evidence. The appellant asserts that the trier of fact should have found that his defense of self-defense was proven by a preponderance of the evidence.
 {¶ 20} In State v. Nields (2001), 93 Ohio St.3d 6, the court held that, as to the manifest weight of the evidence, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Getsy (1998), 84 Ohio St.3d 180, 193-194, citing Statev. Eley (1978), 56 Ohio St.2d 169, syllabus. In State v. Thompkins
(1997), 78 Ohio St.3d 380, the Court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594, "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
 {¶ 21} Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact.Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 22} In State v. Thomas, 77 Ohio St.3d 323, 1997-Ohio-269,673 N.E.2d 1339, the Ohio Supreme Court noted that in Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. Thomas, citing to State v. Williford (1990), 49 Ohio St.3d 247,249, 551 N.E.2d 1279, 1281, and State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 23} Where there is some evidence presented to establish that the defendant initiated the violent altercation, the trial court does not err in rejecting the defendant's affirmative defense of self-defense.State v. Wray, Gallia App. No. 00CA08, 2001-Ohio-2356. The trial court does not commit error in disregarding the victim's trial testimony where there is evidence supporting the victim's prior version of the facts.State v. Brown (May 8, 1998), Allen App. No. 1-97-74. See also ClevelandHeights v. Reed (Oct. 12, 1995), Cuyahoga App. No. 67714.
 {¶ 24} In State v. Marshall, Lorain County App. No. 01CA007773, 2001-Ohio-7015, citing to State v. Payne (July 20, 2000), Cuyahoga App. No. 76539, the court noted that where an officer testifies, based upon years of professional experience, that it is not uncommon for victims of domestic violence to recant their testimony, the officer's testimony is admissible evidence.
 {¶ 25} In the matter at hand, the trial court heard the testimony of the police officers who responded to the 911 call. The testimony indicated that the appellant was calm and that the victim was frightened and upset. Both officers testified that the victim named the appellant as the aggressor in the altercation. This is consistent with the evidence of Detective Oliver regarding the statements made by the victim to her on the telephone and in person the next day. The presentation of this evidence was sufficient to establish for the court, as the trier of fact herein, that the appellant was indeed the aggressor. As the aggressor, the appellant failed to meet his burden of persuasion that he was entitled to the affirmative defense of self-defense.
 {¶ 26} The appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and, COLLEEN CONWAY COONEY, J., CONCUR.
[1] R.C. 2919.25 (A) states that "No person shall knowingly cause or attempt to cause physical harm to a family or household member."
[2] The appellant stipulated that he and Ms. Jones were family or household members.